UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIN C. WEBER,

        Plaintiff,

                                                        Case No. 02-74602

vs.

                                                        HON. GEORGE CARAM STEEH

INFINITY BROADCASTING CORP.
et al.,

        Defendants.
_____/

ORDER GRANTING IN PART THE FOLLOWING: PLAINTIFF'S MOTION
FOR RECONSIDERATION [143], DEFENDANTS' MOTION FOR
RECONSIDERATION [147], PLAINTIFF'S MOTION FOR ATTORNEY
FEES [114], PLAINTIFF'S SUPPLEMENTAL MOTION FOR ATTORNEY
FEES [145], AND DEFENDANTS' OBJECTIONS TO TAXED BILL OF COSTS [120]

      Before the Court are plaintiff's and defendants' motions for reconsideration of a December 14, 2005 Order granting in part defendants' motion for judgment as a matter of law, granting defendants' motion for remittitur and denying defendants' motion for new trial. Also before the Court are plaintiff's motions for attorney fees and costs, and defendants' objections to the taxed bill of costs. The Court held a conference in chambers regarding these motions on January 9, 2006, as well as a hearing on the record on January 30, 2006. After careful consideration, the Court grants each of the aforementioned motions in part, as further described below.

I. Reconsideration

      A. Future and Past Wage Loss

      In its December 14, 2005 Order, the Court remitted future economic damages, along with non-economic and punitive damages, to a total of $300,000. Ordering

remittal of a category of damages not specifically requested by defendants is within the inherent power of the Court. Jackson v. City of Cookeville, 31 F.3d 1354, 1358 fn.4 (6th Cir. 1994); Mooney v. Henderson Portion Pack, 339 F.2d 64, 65 (6th Cir. 1964). In this context the Court has reviewed both the jury award for past as well as future lost compensation. Plaintiff correctly points out that the statutory cap of § 1981a(b)(3) does not apply to future wage loss. Pollard v. E I du Pont de Nemours & Co., 532 U.S. 843, 848 (2001). The verdict form clearly shows that the jury awarded $1,078,000 to plaintiff in future damages for lost compensation and benefits. This Court erroneously included the $1,078,000 of future lost compensation in the categories of damages remitted in accordance with the cap, and, as argued by plaintiff essentially reduced future compensation to zero. Therefore, the Court reinstates the jury's damage award of future lost compensation, or front pay. Nevertheless, the Court still views the future compensation awarded as clearly excessive and will remit the same, along with past wage loss, for reasons described below.

      1.  Past Wage Loss

The jury award for plaintiff's wage loss for the three and a half years from termination to the time of trial was $514,000. Although not specifically addressed by defendants, the Court views the award as clearly excessive in that it exceeds the sum reasonably supported by the evidence. During the period between plaintiff's termination and trial, damages for past wage loss should be based on the wage plaintiff earned at the time of her termination, in this case $66,000. The jury undoubtedly calculated past wage loss based on what the male hosts of the morning and afternoon drive-time hosts were paid, in light of their determination that defendants violated the Equal Pay Act.

However, the Court found as a matter of law that there was no violation of the Equal Pay Act. Absent that violation, no reasonable findings could support the award of $514,000.

It is reasonable to assume that plaintiff would have been given a modest pay increase had her employment not been terminated. In the three year and seven month period between plaintiff's termination and the trial, the Court calculates past wage loss at $250,000. In addition, plaintiff lost benefits which, according to her own estimation, would be 20% of her pay. When benefits of $50,000 are added to past wage loss of $250,000, the past lost compensation amounts to $300,000. Stated as a percentage, the remitted amount of past wage loss damages is 58% of the jury's award.

2. Future Wage Loss

The amount of future wage loss damages must also be reduced due to the Court's finding regarding the Equal Pay Act. The Court will apply the same 58% remittitur to the future wage and benefit loss awarded by the jury. This calculation reduces the $1,078,000 awarded to $625,240. This remittitur addresses the concern that the jury applied the wrong wage to its calculation, yet it does not penalize plaintiff for other proper assumptions possibly made by the jury.

The Court recognizes that a rational argument exists that a more drastic remittitur, perhaps even to zero, should be considered. Even with the mitigation evidence presented by plaintiff it is very difficult to accept plaintiff's claim that she remains unemployed and unable to obtain any full time work with comparable, moderate compensation even many years after her termination. The fact that her "dream job" was radio host does not excuse her failure to search for all manner of jobs available to well-

educated, intelligent, able-bodied persons. On the other hand, the Court's view of the evidence must yield to any interpretation that a rational fact-finder could adopt when viewing that evidence in the light most favorable to plaintiff. Therefore, the Court applies the formula described in calculating remittitur.

    B. <u>Revised Damages Award</u>

The total amount of damages awarded to plaintiff is $300,000 in past damages for lost compensation and benefits, $625,240 in future damages for lost compensation and benefits, and $300,000 for punitive damages and past and future damages for mental anguish and emotional distress, for a total of $1,225,240.

    C. <u>Conditional Remittitur</u>

The Court next grants defendants' motion for reconsideration in that it is making its order of remittitur conditional. Conditional remittitur is the general rule, except where an entire category of damages is set aside or damages are capped by statute. Neither of the exceptions are present in this case. With regard to damages, the Court may not substitute its judgment for that of the jury, without offering plaintiff a choice of a new trial or accepting the remitted amount. Not until plaintiff makes her choice between accepting the remittitur or proceeding with a new trial will the Court enter a final, appealable order in this case. See, <u>Meyers v. Wal-Mart Stores, East, Inc.</u>, 257 F.3d 625, 636 (6th Cir. 2001); <u>Anderson v. Roberson</u>, 249 F.3d 539, 542 (6th Cir. 2001); <u>Farber v. Massillon Board of Education</u>, 917 F.2d 1391 (6th Cir. 1990).

II. <u>Attorneys Fees and Costs</u>

    A. <u>Pre-Trial and Trial Fees</u>

Through the end of trial in this case, plaintiff's counsel documents fees of $411,987.50 for 2200 hours of work. Mr. Sterling's hourly rate is $275. Although defendants object to the rates and total billings, defense counsel admits his own "comparable" billing rates, use of similar attorney resources, and total billings in a similar amount. Based on the Court's general knowledge of rates charged by local law firms, including the hourly rate charged by defendants' counsel, this Court determines that Mr. Sterling's rate is reasonable. The Court also finds that Mr. Sterling's associate, Mr. Jack Gray, should be compensated for his time, and that his hourly rate of $125 is reasonable.

"[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees . . . ." <u>Hensley v. Eckerhard</u>, 461 U.S. 424, 440 (1983). Plaintiff cannot recover fees for time spent on unsuccessful claims, unless they were related to those on which she prevailed. <u>Chavez v. Thomas & Betts Corp.</u>, 396 F.3d 1088, 1103 (10th Cir. 2005). Of plaintiff's original ten claims, she has prevailed on only four post-verdict. However, because of the substantial overlap factually among many of plaintiff's claims, a 25% reduction of the lodestar amount will result in a reasonable fee for the pre-trial and trial period. See, <u>Scales v. J.C. Bradford and Co.</u>, 925 f2d 901, 910 (6th Cir. 1991). The 25% reduction also reasonably accounts for defendants' complaints regarding block billing, vague time entries and work done on unsuccessful claims.

Applying the 25% reduction to plaintiff's request for attorney fees $411,987.50 for the pre-trial and trial period results in an award of fees of $308,990.62.

B. <u>Post-Trial Fees</u>

Plaintiff seeks post-trial attorney's fees for Mr. Sterling and Mr. Gray, as well as for its appellate counsel, Hogan & Hartson. As an initial matter, the Court finds that it was not unreasonable for plaintiff to go to Washington D.C. to hire appellate counsel. Mr. Garre's hourly rate was $625 and Mr. Phillips' hourly rate was $350. Plaintiff has shown that these rates are in keeping with the hourly rates charged by firms in Washington D.C. However, the rule in the Sixth Circuit is that the prevailing market rate is the rate in the venue of the court of record. <u>Adcock-Ladd v. Secretary of Treasury</u>, 227 F.3d 343 (6th Cir. 2000). While the work done by the lawyers at Hogan & Hartson actually occurred in Washington D.C., the proper market for determining a reasonable hourly rate is Detroit. Plaintiff argues that if Mr. Garre practiced in Detroit, he would command an hourly rate of $500. Plaintiff has attached the affidavit of Bruce T. Leitman, a local appellate attorney. Mr. Leitman opines that the senior appellate lawyers at Detroit's largest law firms bill between $400 and $550 per hour. The Court does not feel compelled to be bound by the affidavit of Mr. Leitman, which lacks a foundation for many of his conclusions. However, the Court is sufficiently familiar with the rates billed by the large Detroit law firms, and concludes that an hourly rate of $450 is reasonable for the work done by Mr. Garre. The work done by senior associate Mr. Phillips would reasonably be compensated at $250 per hour at Detroit rates. The work done by appellate partner Mr. Bartolomucci, who bills $525 per hour in Washington D.C., would reasonably be compensated at $375 per hour. These "Detroit" rates are

basically 70% of the Washington D.C. rates.  In determining how much of Hogan & Hartson's attorney's fees were reasonably incurred, the Court will first discount the fees by 30% to reflect Detroit rates.  Therefore, the fees submitted to the Court which total $146,175 are reduced by 30%, for an adjusted total of $102,322.

Plaintiff also seeks to recover post-trial attorney's fees incurred by Mr. Sterling and his firm.  The Court finds that the work done by Mr. Sterling was not duplicative of Hogan & Hartson such that he should not recover his attorney fees at all.  Mr. Sterling submitted fees of $31,556.25 and Mr. Gray submitted fees of $3,968.75 for work completed following the jury verdict.  The hourly rates charged by Mr. Sterling and Mr. Gray have already been found to be reasonable in this case.

Defendants have some specific objections to awarding post-verdict attorney fees in this case.  Plaintiff did not prevail on her EPA claim, nor did she prevail entirely on the issue of remittitur.  Plaintiff acknowledged spending some 40 hours researching the issue of the punitive damages cap, and then not citing any cases in support of the argument to the Court.  In addition, defendants make general objections regarding block billing, vague billing entries, work done on issues in plaintiff's other cases, excessive billing on certain issues, and hours billed before the complaint was filed.   The Court has considered each of these objections, and determines that a reduction to the lodestar of 25% makes the attorney fee award reasonable.  The attorney fee for Hogan & Hartson is reduced to $76,741.50.  The attorney fee for Mr. Sterling and Mr. Gray is reduced to $26,643.75 for the post-verdict period.  Total attorney fees awarded to plaintiff, therefore, amount to $412,375.87.

C. Costs

1. Pre-trial Costs

Plaintiff seeks to recover pre-trial and trial costs of $11,303.73. This amount is above and beyond the Bill of Costs submitted by plaintiff. A Taxed Bill of Costs was approved by the Clerk in the amount of $6,313.22 on June 10, 2005. Defendant objects to any costs not set forth in 28 U.S.C. §1920. Plaintiff requests costs incurred for "telephone, postage, photocopies and miscellaneous" in the amount of $2,708.18. There is no further description for the Court to determine the purpose of these expenditures, nor are these types of costs generally taxable. (Bill of Costs Handbook, §II F, G(2)). They will not be recoverable against defendants in this case. Plaintiff seeks $212.27 for "messenger service" and "mileage and parking at USDC". These expenses are not recoverable as described. Plaintiff seeks $250 for a witness fee for Dr. Hoisington. Plaintiff already sought to tax this cost, and the Clerk approved a $40 expert witness fee, but disapproved the service portion of the fee because the witness did not testify. (Bill of Costs Handbook §II D(2)(b)). Plaintiff seeks $300 as a "fee for deposition preparation meeting with Dr. Schwartzenfeld". Plaintiff never called Dr. Schwartzenfeld as a witness at trial, so this expense is not recoverable. Finally, plaintiff seeks $732.14 for demonstrative aids used at trial.

The total amount of costs objected to by defendants, and not approved by the Court, is $4,202.59. Costs for the pre-trial and trial period, aside from those requested in the Bill of Costs, are approved in the amount of $7,101.14.

### 2. Bill of Taxed Costs

Defendants object to the taxation of costs for reporter and transcript fees for several depositions which were not used by plaintiff at trial. For example, plaintiff did not call Jill Forsyth or Dr. Ted Schwartzenfeld as trial witnesses. Al Hurschman testified live at trial and plaintiff did not use his deposition to impeach him. Plaintiff has not documented why it was necessary to have the transcripts of plaintiff's depositions, other than for trial preparation. Court reporter and transcript fees are taxable for some purposes, such as when used at trial to impeach a witness, or when used in support of a motion. (Handbook §II B (1)(d), (1)(e)). However, a transcript used primarily for trial preparation or discovery is not taxable. (Handbook §II, (B)(2)(b)). Therefore, the costs taxed for transcript fees and court reporter fees related to these witnesses, amounting to $1,911.20 will disallowed.

Defendants object to a second deposition of Michael Mistretta because it consisted of subject matter already covered in the first deposition and issues deemed inadmissible at trial. The Court disagrees with defendants' objections and permits the taxation of the costs associated with the second deposition of Mr. Mistretta to stand.

Finally, defendants object to a $71.92 messenger fee which is incorrectly described as a service fee. The Court looked at the detailed billing report submitted by plaintiff and agrees that the fee was a messenger fee to deliver the complaints to CSC Lawyers' Corp. Services of Lansing for service. Therefore, the $71.92 fee is not taxable.

The Taxed Bill of Costs which approved costs of $6,313.22 is now reduced to an approved amount of $4,330.10.

9

      3. Post-Trial Costs

Post-trial costs in this matter are comprised mostly of computer generated research by Hogan and Hartson. These costs are not taxable under the Bill of Costs Handbook. (Handbook §II, G(2)(c)).

III. Conclusion

Plaintiff has 14 days to accept judgment of $1,225,240 based on remittitur and attorney fees and costs of $423,807.11. In the event plaintiff does not file her acceptance of this judgment as remitted, this Order shall constitute an order granting defendants' motion to set aside the jury verdict *in toto* and ordering a new trial.

                                  s/George Caram Steeh  
                                  GEORGE CARAM STEEH  
                                  UNITED STATES DISTRICT JUDGE

Dated: February 7, 2006

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on February 7, 2006, by electronic and/or ordinary mail.

                                  s/Josephine Chaffee  
                                  Secretary/Deputy Clerk